U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
APR 1 1 2000
1:30pm
ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

MICHAEL BENHAM, ET AL

VERSUS               CIVIL ACTION NO. 2:00cv0899

CONOCO, INC., ET AL

JUDGE TRIMBLE

MAGISTRATE JUDGE WILSON

**NOTICE OF REMOVAL**

TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT
      COURT FOR THE WESTERN DISTRICT OF LOUISIANA

Petitioners, *Danube Insurance, Ltd. ("Danube"), and XL Insurance Ltd. ("XL")*, by and through their undersigned counsel, with full reservation of any and all defenses, including objections to service of process and personal jurisdiction, respectfully file this *Notice of Removal* and state:

1.   This action currently is pending against Petitioners and other named defendants in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana, bearing Docket No. 99-8251 ("State Court Action"). The State Court Action is related to approximately two-hundred fifty-two other actions (hereinafter "Other Related Actions") currently pending against Petitioners and other defendants within the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana. A separate *Notice of Removal* has been filed simultaneously with the instant *Notice of Removal* for the Other Related Actions currently pending against Petitioners within the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana.



2. In the State Court Action and Other Related Actions, plaintiff(s) seek(s) to recover damages for injuries allegedly caused by exposure to ethylene dichloride ("EDC") that emanated from an underground pipeline at Conoco, Inc.'s ("Conoco") Marine Docks Facility in Westlake, Louisiana ("the EDC loss").

3. In the State Court Action and Other Related Actions, Condea Vista Chemical Company ("Vista"), original defendant in the State Court Action and the Other Related Actions, has filed a cross-claim against Conoco and/or third-party demand against several of Conoco's insurers and/or reinsurers, including Danube and XL, alleging that "Conoco as a co-defendant is conventionally and/or legally liable to Vista for contribution, or alternatively, indemnity, in whole or in part, and Conoco's insurers are likewise liable to Vista as third-party beneficiaries under the policies of insurance from any and all claims, demands and damages alleged by plaintiffs in the original petition or that petition as it may be amended."

4. The claims asserted by the original plaintiffs within the State Court Action and Other Related Actions seek damages that, subject to the terms and conditions of the policies issued by Conoco's insurers and/or reinsurers, including Danube and XL, may require some payment that ultimately derives from said policies. Danube and XL have denied coverage for all claims arising from the EDC loss, including claims asserted by original plaintiffs and third-party plaintiffs within the State Court Action and Other Related Actions.

5. Danube is a Bermuda corporation maintaining its principal place of business in Hamilton, Bermuda.

6. XL is a Bermuda corporation maintaining its principal place of business in Hamilton, Bermuda.

7. Conoco is a United States corporation maintaining its principal place of business in Houston, Texas.

8. The United States is a party ("Contracting State") to the <u>Convention on the Recognition and Enforcement of Foreign Arbitral Awards</u> ("Arbitration Convention"), 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, *reprinted following* 9 U.S.C.A. § 201 (W.Supp. 1990) (entered into force for the United States on December 29, 1970). Bermuda is bound by the Arbitration Convention pursuant to the United Kingdom's <u>Instrument of Accession</u> and subsequent extension to Bermuda.

9. Pursuant to Article II of the Arbitration Convention, the United States and Bermuda are each bound to "recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them...." The courts of the United States are also bound to enforce such arbitration agreements.

10. In 1970, Congress enacted legislation to enforce the Arbitration Convention within the courts of the United States. *See* 9 U.S.C. § 201-208.

11. The insurance and/or reinsurance policies issued by Danube and XL that relate to the State Court Action and Other Related Actions include the following arbitration agreement:

> (1) Any dispute, controversy or claim arising out of or relating to this Policy or the breach, termination or invalidity thereof shall be finally and fully determined in London, England under the provisions of the Arbitration Acts of 1950, 1975 and 1979 and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows:
>
>> Any party may, in the event of such a dispute, controversy or claim, notify the other party or parties to such dispute, controversy or claim of its desire to arbitrate the matter, and at the time of such

3

notification the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. The other party who has been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to a judge of the High Court of Justice of England and Wales for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said thirty (30) calendar period, either of the parties may within a period of thirty (30) calendar days thereafter, after notice to the other party or parties, apply to a judge of the High Court of Justice of England and Wales for the appointment of a third arbitrator and in such case the person so appointed shall be deemed and shall act as the third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Board of Arbitration for the controversy in question shall be deemed fixed. All claims, demands, denials of claims and notices pursuant to this Condition N shall be given in accordance with Condition U below.

(2) The Board of Arbitration shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may prescribe reasonable rules and regulations governing the course and conduct of the arbitration proceeding, including without limitation discovery by the parties.

(3) The Board shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to

be served on all the parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto. Such decision shall be a complete defense to any attempted appeal or litigation of such decision in the absence of fraud or collusion. Without limiting the foregoing, the parties waive any right to appeal to, and/or seek collateral review of the decision of the Board of Arbitration by, any court or other body to the fullest extent permitted by applicable law.

(4)  Any order as to the costs of the arbitration shall be in the sole discretion of the Board, who may direct to whom and by whom and in what manner they shall be paid.

(5)  The Company and the Named Entity agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Company by any of the Insured's or the Named Entity's other insurers or reinsurers in any jurisdiction or forum other than that set forth in this Condition N, the Named Entity and/or Insured will in good faith take all reasonable steps requested by the Company to assist the Company in obtaining a dismissal of these claims (other than on the merits) and will, without limitation, undertake to the court of other tribunal to reduce any judgment or award against such other insurers or reinsurers to the extent that the court or tribunal determines that the Company would have been liable to such insurers or reinsurers for indemnity or contribution pursuant to this Policy. The Named Entity shall be entitled to assert claims against the Company for coverage under this Policy, including without limitation, for amounts by which the Named Entity or the Insured reduced its judgment against such other insurers or reinsurers in respect of such claims for indemnity or contribution in an arbitration between the Company and the Named Entity pursuant to this Condition N, which arbitration may take place before, concurrently with and/or after the action or proceeding involving such other insurers or reinsurers; provided, however, that the Company in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this Policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers or reinsurers (and no determination in any such action or proceeding involving such other insurers or reinsurers shall have collateral estoppel, *res judicata*, or other issue preclusion or estoppel effect against the Company in such arbitration, irrespective of whether or not the Company remained a party to such action or proceeding).

12. Danube issued another insurance policy to Conoco that relates to the State Court Action and Other Related Actions and contains the following arbitration agreement:

> Any dispute arising under this Policy shall be finally and fully determined in London, England under the provisions of the English Arbitration Act of 1950, as amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:
>
> Any party to the dispute may, once a claim or demand on his part has been denied or remains unsatisfied for a period of twenty (20) calendar days by any other, notify the others of its desire to arbitrate the matter in dispute, and at the time of such notification the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. Any party or parties who have been so notified shall within ten (10) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party or parties notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within ten (10) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of ten (10) calendar days, apply to a judge of the High Court of England for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within ten (10) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said ten (10) calendar day period, any of the parties may within a period of ten (10) calendar days thereafter, after notice to the other party or parties, apply to a judge of the High Court of England for the appointment of a third arbitrator, and in such case the person so appointed shall be deemed and shall act as the third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Board of Arbitration for the controversy in question shall be deemed fixed. All claims, demands, denials of claims and notices pursuant to this Section (o) of the Policy shall be deemed made if in writing and mailed to the last known address of the other party or parties.
>
> The Board of Arbitration shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing, at the option of said Board, prescribe reasonable rules and regulation governing the course and conduct of said hearing.

The Board shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all the parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto, and such decision shall be a complete defense to any attempted appeal or litigation of such decision in the absence of fraud or collusion.

All costs of arbitration shall be borne equally by the parties to such arbitration.

The Company and the Insured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Company by any of the Insured's other insurers in any jurisdiction or forum other than that set forth in this section (o), the Insured will in good faith take all reasonable steps requested by the Company to assist the Company in obtaining a dismissal of these claims (other than on the merits) and will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Company would have been liable to such insurers for indemnity or contribution pursuant to this Policy. The Insured shall be entitled to assert claims against the Company for coverage under this Policy, including, without limitation, for amounts by which the Insured reduced its judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Company and the Insured pursuant to this Section (o); provided, however, that the Company in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this Policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers.

13.     The "arbitration agreements" within Danube and XL's respective policies fall under the Arbitration Convention as contemplated by 9 U.S.C. § 202 because said written arbitration agreements to arbitrate in London, England – a signatory of the Arbitration Convention - are included in a commercial contract arising out of a legal relationship which is not entirely between citizens of the United States.

14. A dispute exists between Conoco, Danube, XL, and several of Conoco's other insurers and/or reinsurers concerning coverage for some or all of the original claims, cross-claims, and third-party claims in the State Court Action and Other Related Actions. XL has commenced arbitration of this dispute. The aforementioned dispute concerns whether the policies issued by Conoco's insurers and/or reinsurers, including Danube and XL, provide coverage for claims asserted by the original plaintiffs and/or third-party plaintiffs arising from the EDC loss. This dispute arises under the terms of Danube's and XL's respective policies, including the arbitration agreements, the Arbitration Convention, 9 U.S.C. § 201-208, and other applicable law. XL also disputes the rights of third-party plaintiffs to initiate and continue litigation against XL.

15. This Court possesses original subject matter jurisdiction of an action or proceeding falling under the Arbitration Convention pursuant to 9 U.S.C. § 203.

16. Pursuant to 9 U.S.C. § 205, state court proceedings relating to an arbitration agreement falling under the Arbitration Convention may be removed to federal court at any time before trial. 9 U.S.C. § 205 provides, in pertinent part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before trial thereof, remove such action or proceeding to the district court for United States for the district and division embracing the place where the action or proceeding is pending.

17. The subject matter of the State Court Action, and all Other Related Actions that have been removed simultaneously herewith, to this Court, relate to the arbitration agreements falling under the Arbitration Convention as contemplated by 9 U.S.C. § 205. See Acosta v. Master Maintenance & Construction, Inc., 52 F.Supp. 2d 699 (M.D. La. 1999).

18.     Pursuant to 9 U.S.C. §§ 203 and 205, Petitioners are entitled to a federal forum to determine, inter alia, their rights under the arbitration agreements of their respective policies and to enforce such arbitration agreements.

19.     Petitioners advise that the consent of all defendants is not required for purposes of removal under 9 U.S.C. § 205. See Acosta, *supra*, at 708-709.

20.     Petitioners pledge to provide the Court with anything it requires pursuant to 28 U.S.C. § 1446(a) and/or 28 U.S.C. § 1447(b).

21.     ~~Petitioners attach a copy of the third-party demand received by them.~~ GTH Pursuant to 28 U.S.C. 1446(a), Petitioners represent that no copies of process, pleadings, or orders have been served upon them.

22.     Petitioners pledge to give written notice of the filing of this *Notice of Removal* to all parties as required by 28 U.S.C. § 1446(d).

23.     Petitioners will give written notice of this removal and file a copy with the Clerk of the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana, as required by 28 U.S.C. § 1446(d).

24.     Petitioners reserve the right to amend or supplement this *Notice of Removal*.

**WHEREFORE**, Petitioners respectfully request that this action proceed in this Court as an action properly removed to same pursuant to 9 U.S.C. § 201-208.

DATED:     April 11, 2000

Respectfully submitted,

**GOLD, WEEMS, BRUSER,
SUES & RUNDELL, A P.L.C.**

BY: _____
**CHARLES S. WEEMS, III, T.A. (#13310 )
RAYMOND L. BROWN, JR. (#1737)
J. KENDALL RATHBURN (#17763)
G. TRIPPE HAWTHORNE (#23773)**
2001 MacArthur Drive
P. O. Box 6118
Alexandria, LA  71307-6118
Telephone:  (318) 445-6471
Facsimile:  (318) 445-6476
Attorney for DANUBE INSURANCE LTD.


**BARKLEY & THOMPSON, L.C.**

BY: _____
**THOMAS E. SCHWAB, T.A. (#02099)**
1515 Poydras Street, Suite 2350
New Orleans, LA  70112
Telephone:  (504) 595-3350
Telecopier:  (504) 595-3355
Attorney for XL INSURANCE LTD.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Removal has been this date forwarded to all known counsel of record, listed below, by depositing same in the United States Mail, postage prepaid and properly addressed.

____11____ day of April, 2000.

_____
THOMAS E. SCHWAB, T.A.

Mr. Gordon McKernan
The McKernan Firm
8710 Jefferson Highway
Baton Rouge, Louisiana  70809

Mr. John A. Jeansonne, Jr.
Jeansonne & Remondet
200 West Congress Street, Suite 1100
Lafayette, Louisiana  70501

Mr. Timothy A. Pratt
Shook, Hardy & Bacon
One Kansas City Place
1200 Main Street
Kansas City, Missouri  64105

Mr. Craig W. Marks
Briney & Foret
P. O. Drawer 51367
Lafayette, Louisiana  70505

Mr. Thomas J. Solari
Woodley, Williams, Boudreau,
  Norman, Brown & Doyle
P. O. Box 3731
Lake Charles, Louisiana  70602

Mr. Charles Chassaignac, IV
Porteus, Hainkel, Johnson & Sarpy
343 Third Street, Ste. 202
Baton Rouge, Louisiana  70801

Mr. Gregory W. Belfour
Jones, Tete, Hanchey, Nolen, Fonti &
  Belfour
P. O. Box 910
Lake Charles, Louisiana  70602

Mr. Erich P. Rapp
Ms. Jennifer G. Gary
Keane, Miller, Hawthorne, D'Armond,
  McCowen & Jarman
P. O. Box 3513
Baton Rouge, Louisiana  70821

Mr. Mark A. Ackal
Attorney at Law
P. O. Box 52045
Lafayette, Louisiana  70505

Mr. Wade T. Visconte
The Gray Law Firm
P. O. Box 1467
Lake Charles, Louisiana  70602

Mr. James M. Taylor
Taylor, Wellons & Politz
1515 Poydras, Ste. 1900
New Orleans, Louisiana  70112